IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| INTERNATIONAL AUCTION AND | * | Chapter 7 |
| APPRAISAL SERVICES LLC, | * | |
|     Debtor | * | Case No.: 1-11-bk-00813-MDF |
| | * | |
| STEVEN M. CARR, Trustee, | * | |
|     Plaintiff | * | |
| | * | |
| v. | * | Adversary No.: 1-13-ap-00018-MDF |
| | * | |
| | * | |
| ALAN D. LOESER and | * | |
| PATRICIA M. BRITTON, | * | |
|     Defendants | * | |

## OPINION

Before the Court is the motion of Alan D. Loeser ("Loeser") and Patricia M. Britton ("Britton") (collectively, "Defendants") to dismiss the Amended Complaint filed by Steven Carr (the "Trustee"), Chapter 7 trustee for the estate of International Auction and Appraisal Services LLC ("Debtor"). The Trustee is seeking to avoid certain transfers made to Defendants before Debtor filed its bankruptcy petition. For the reasons that follow, Defendants' Motion will be denied.

## I. Background

Before filing for bankruptcy, Debtor was a limited liability company that provided industrial appraisal and auction services. Defendant Loeser was Debtor's managing director and sole member. He is married to Defendant Britton. Neither Defendant has filed a proof of claim in Debtor's bankruptcy case.

The Trustee commenced an adversary proceeding against Defendants on January 13, 2013. On February 5, 2013, he filed the Amended Complaint seeking to recover $96,524.04 that

he alleges Defendants withdrew from Debtor's general business account between January 2010 and January 2011 as "owner draws." The Amended Complaint asserts that Loeser took eight "owner draws" payable to himself from Debtor's general business account in an aggregate amount of $57,024.04, including $33,274.04 withdrawn in September 2010. The funds withdrawn in September 2010 allegedly were used by Defendants as a down payment on a beach house. The Trustee asserts that this draw rendered Debtor insolvent. The Trustee also alleges that between January 2010 and December 2010, Debtor issued ten separate checks in an aggregate amount of $39,500 payable to Britton and drawn on Debtor's general business account. According to the Amended Complaint, Debtor made other disbursements directly to Defendants' creditors for items such as mortgage payments, vehicle payments, and country club memberships. The Amended Complaint alleges that these transfers were not made in good faith or in the normal course of Debtor's business affairs.

In Count I of the Amended Complaint, the Trustee avers that Loeser and Britton are "insiders" as defined by the Bankruptcy Code. He further asserts that the transfers drained Debtor's bankruptcy estate and were made with actual intent to hinder, delay, or defraud creditors. The Trustee concludes, therefore, that the transfers may be avoided under 11 U.S.C. § 548(a)(1)(A). Based on the same factual allegations, the Trustee asserts in Count III that the transfers are avoidable under the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"), 12 Pa. C.S. § 5104, which the Trustee may enforce through 11 U.S.C. § 544(b).

In Count II of the Amended Complaint, the Trustee avers that Debtor received less than reasonably equivalent value from Loeser and Britton in exchange for the transfers, that Debtor was insolvent on the date of the transfers or became insolvent as a result of the transfers, and that

2

the transfers were made pursuant to an employment contract. Therefore, these transfers may be avoided under 11 U.S.C. § 548(a)(1)(B). Based on the same allegations, the Trustee avers in Count IV of the Amended Complaint that the transfers are avoidable under PUFTA, 12 Pa. C.S. § 5105, which also may be enforced through 11 U.S.C. § 544(b).

On March 6, 2013, Defendants filed a Motion to Dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(1) and (6). Rule 12(b)(1) provides that a defendant may raise by motion the defense that a court lacks subject-matter jurisdiction. In support of the Motion under Rule 12(b)(1), Defendants argue that under the Supreme Court's decision in *Stern v. Marshall*, 131 S.Ct. 2594, 2616 (2011), this Court lacks the constitutional authority to enter final judgment in a fraudulent transfer action without their consent.[1] Defendants also allege that the Trustee has failed to state a claim upon which relief can be granted because some of the transfers described in the Amended Complaint were made before Debtor allegedly became insolvent.

On March 20, 2013, the Trustee filed an Answer in opposition to the Motion to Dismiss. In his Answer, the Trustee argues that Defendants' interpretation of *Stern* is too broad and that this Court clearly has jurisdiction over core bankruptcy matters such as fraudulent transfer actions under PUFTA through 11 U.S.C. § 544 and under 11 U.S.C. §548. The Trustee also asserts that under the relevant sections of the Bankruptcy Code and PUFTA, he either is not

---

[1] The constitutional authority of this Court to render a final decision in the within adversary proceeding is at issue rather than subject-matter jurisdiction. Defendants brought their motion to dismiss under Rule 12(b)(1), but explicitly raised the issue of the Court's constitutional authority to hear and enter judgment in the matter. Although Rule 12(b)(1) refers to "subject-matter jurisdiction" and does not address "constitutional authority," I find that Defendants' motion to dismiss under Rule 12(b)(1) is the appropriate means to address this Court's constitutional authority to hear and decide the Trustee's claims.

3

Case 1:13-ap-00018-RNO    Doc 9    Filed 06/04/13    Entered 06/05/13 07:56:24    Desc
Main Document    Page 3 of 15

required to prove Debtor was insolvent or that the preliminary nature of the proceeding makes a ruling based on disputed factual allegations inappropriate.

The parties have filed briefs on the Motion and Answer, and the matter is ready for decision.

## II. Discussion

*A. Authority of bankruptcy court to enter final judgment in fraudulent transfer action*

Sections 544 and 548 of the Bankruptcy Code provide a Chapter 7 trustee with "general authority to avoid certain [pre-petition] transfers for the benefit of the estate." *In re MS55, Inc.*, 477 F.3d 1131, 1134 (10th Cir. 2007). Section 544 enables a trustee to use state law to avoid any transfer that an unsecured creditor could have avoided outside of bankruptcy. Section 548 includes a separate power authorizing a trustee to avoid fraudulent conveyances that occurred before the petition was filed. Under 28 U.S.C. § 157(b)(2)(H), fraudulent conveyance actions are specifically denoted as "core" proceedings arising under the Bankruptcy Code and subject to final determination by the bankruptcy court.

Notwithstanding this clear statutory authority, many courts have considered whether a bankruptcy court has the constitutional authority to enter a final judgment on a fraudulent transfer claim when a trustee is asserting the claim against a party that has not filed a proof of claim and has not consented to the bankruptcy judge entering final judgment in the matter. In *Stern v. Marshall,* the Supreme Court held that not all matters designated as "core" could be finally determined by an Article I court. Specifically, the Court held that a bankruptcy judge lacked constitutional authority to enter final judgment on a state law counterclaim brought by the bankruptcy estate against a creditor. *Stern*, 131 S.Ct. at 2608. The Supreme Court observed that

4

although these types of claims are designated as "core," and the bankruptcy court is authorized by statute to decide core matters, this power exceeds the constitutional limits placed on an Article I judge. *Id.* at 2614. *Stern* instructs that unless a defendant consents to entry of a final order by a bankruptcy court, the court may not adjudicate a counterclaim claim against a creditor or other party unless resolution of the claim against the defendant is part of the claim allowance process or the claim against the defendant falls within the public rights exception. *Resource Funding, Inc. v. Pac. Continental Bank (In re Washington Coast 1, LLC),* 485 B.R. 393, 403 (B.A.P. 9th Cir. 2012) (citing *Stern*, 131 S.Ct. at 2612-18).[2]

Defendants do not dispute that this adversary involves a core matter. They do not, however, consent to entry of final judgment by an Article I court. Further, the Trustee's claim against Defendants will not be resolved as part of the claims allowance process because neither Defendant has filed a claim. Thus, the Trustee's claim may be adjudicated by this Court only if it is a claim that falls within the public rights exception. Recent cases, however, provide no support for the proposition that the Supreme Court would categorize fraudulent transfer claims as public rights.

The Supreme Court's decision in *Stern* relies heavily on its prior decision in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989). In *Granfinanciera*, the Court considered whether a non-creditor defendant to a fraudulent conveyance action under § 548 had a Seventh

---

[2]The "public rights exception" permits an Article I court to enter final orders in cases that otherwise must be determined by an Article III court. Congress "may create a seemingly 'private' right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary." *Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 593-94 (1985) *quoted in Pension Fin. Serv., Inc. v. O'Connell (In re Arbco Capital Mgmt., LLP)*, 479 B.R. 254, 263 (S.D.N.Y. 2012).

Amendment right to a jury trial. *Id*. at 36. To resolve this question, the Supreme Court reexamined the public rights exception considering that "Congress may only deny trials by jury in actions at law . . . in cases where 'public rights' are litigated." *Id*. at 51. The Court noted that fraudulent conveyance actions are "quintessentially suits at common law that more nearly resemble state-law contract claims brought by a [debtor] to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." *Id.* at 56 (citation omitted). Therefore, a defendant in a fraudulent transfer action brought in bankruptcy court cannot be divested of the right to a jury trial "merely because Congress [has] designated fraudulent conveyance actions 'core proceedings' under the Bankruptcy Code." *Smith v. Dowden*, 47 F.3d 940, 942 (8th Cir. 1995) (citing *Granfinanciera*, 492 U.S. at 58-59).

In *Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 702 F.3d 553, 561 (9th Cir 2012), the Court of Appeals for the Ninth Circuit recently became the first circuit court to hold that the Supreme Court's reliance on the logic of *Granfinanciera* in *Stern* leads to the conclusion that fraudulent transfer actions may not be decided by an Article I court. Examining the line of Supreme Court decisions commencing with *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982) through *Granfinanciera*, the Ninth Circuit found the *Stern* decision to be "if not unequivocal, at least conclusive" on the issue. *In re Bellingham*, 702 F.3d at 561. The right to recover fraudulent transfers is a private, not a public right. *Id*. (quoting *Granfinanciera*, 492 U.S. at 55).

Because *Granfinanciera* addressed Seventh Amendment rights and not the constitutional authority of an Article I court, some courts have concluded that a bankruptcy court may continue to enter final judgment in a fraudulent transfer action. *See In re Bellingham*, 702 F.3d at 562

6

Case 1:13-ap-00018-RNO    Doc 9    Filed 06/04/13    Entered 06/05/13 07:56:24    Desc
Main Document    Page 6 of 15

(collecting cases). These cases observe that *Stern* addressed state law counterclaims, not claims explicitly provided for in the Code. They cite to Chief Justice Roberts's statement that the holding in *Stern* is narrow and his observation that the decision is unlikely to have significant practical consequences beyond context of state law counterclaims. *Stern*, 131 S.Ct. at 2620. Ignoring the narrow characterization of the Supreme Court ruling as dicta, the Ninth Circuit held that the Supreme Court's reliance on *Granfinanciera* demonstrates that the Court "fully equated bankruptcy litigants' Seventh Amendment right to a jury trial in federal bankruptcy proceedings with their right to proceed before an Article III judge." *Stern,* 131 S.Ct. at 2614 n.7 *quoted in In re Bellingham*, 702 F.3d at 563 ("Congress could not constitutionally assign resolution of the fraudulent conveyance action to a non-Article III court.") Most relevant to the issue in this case, the *Stern* Court observed that the state law counterclaim before it "– like the fraudulent conveyance claim at issue in *Granfinanciera* – does not fall within any of the varied formulations of the public rights exception in this Court's cases." *Stern*, 131 S.Ct. at 2614. *See Weisfelner v. Blavatnik (In re Lyondell Chemical Co.)*, 467 B.R. 712, 720 (S.D.N.Y. 2012) ("Under both *Stern* and *Granfianciera*, then, it is axiomatic that a fraudulent conveyance claim against a person who has not submitted a claim against a bankruptcy estate, brought solely to augment the bankruptcy estate, is a mater of private right.")

  Several bankruptcy courts in the Third Circuit have addressed the issue of whether a bankruptcy court has the constitutional authority to issue a final order in fraudulent transfer action. Bankruptcy courts in Delaware and the Western District of Pennsylvania have concluded that because *Stern* did not address the ability of an Article I court to finally decide fraudulent transfer actions, bankruptcy courts continue to possess the constitutional authority to enter final

orders in these core matters. *See Zazzali v. 1031 Exchange Group (In re DBSI, Inc.)* 467 B.R. 767, 772 (Bankr. D. Del. 2012); *Bohm v. Titus (In re Titus)*, 467 B.R. 592, 633 (Bankr. W.D. Pa. 2012); *Burtch v. Seaport Capital, LLC (In re Direct Response Media, Inc.)*, 466 B.R. 626, 644 (Bankr. D. Del. 2012); *Cardiello v. Arbogast (In re Arbogast)*, 466 B.R. 287, 326 (Bankr. W.D. Pa. 2012).[3] In a case I decided last year, I agreed with courts adopting a narrow interpretation of *Stern*.[4] Upon further consideration, while a narrow construction may be appropriate in some circumstances, I find persuasive the Ninth Circuit's conclusion that together *Stern* and *Grandfinanciera* hold that a bankruptcy court may not decide a fraudulent transfer action. Accordingly, this Court may not enter a final order in this matter.

　　*B. Authority to issue proposed findings of fact and conclusions of law*

　　Having determined that I do not possess the constitutional authority to enter final judgment in this proceeding, I must consider whether I am authorized to issue proposed findings of fact and conclusions of law for consideration by the District Court. Under 28 U.S.C. § 157(c)(1) and Fed. R. Bankr. P. 9033, a bankruptcy court may hear a matter and "submit proposed findings of fact and conclusions of law to the district court" in a non-core proceeding. There is no explicit authority to submit findings of fact and conclusions of law when the issues to be decided are core. The Southern District of New York noted in the *Lyondell* case that because

---

[3] The *Bellingham* decision was issued on December 4, 2012, after the *DBSI, Titus, Direct Response Media,* and *Arbogast* decisions were rendered.

[4] *See Black, Davis and Shue Agency, Inc. v. Frontier Insurance Co. in Rehabilitation (In re Black, Davis and Shue Agency, Inc.,* 471 B.R. 381, 401 (Bankr. M.D. Pa 2012) ("In deciding the matter before me, I am inclined to follow those courts which have concluded that *Stern* was decided narrowly and should have a limited impact on a bankruptcy court's authority to enter a final judgment on a matter.")

8

*Stern* does not address whether a bankruptcy court can issue findings of fact and conclusions of law in core matters, some litigants have asserted that the Supreme Court created a statutory "gap." These litigants have argued that a bankruptcy court may not render a final decision or issue proposed findings of fact and conclusions of law when it lacks the constitutional authority to decide a core matter. *In re Lyondell*, 467 B.R. at 724. This interpretation of *Stern*, however, goes too far and is contrary to the Supreme Court's observation that "the case would not 'meaningfully change[] the division of labor' between bankruptcy courts and district courts. *Id*. (quoting *Stern*, 131 S.Ct. at 2620).

In *Bellingham*, the Ninth Circuit observed that 28 U.S.C. § 157(b)(2) was intended to expand the jurisdiction of bankruptcy courts as far as the Constitution would permit. *In re Bellingham*, 702 F.3d at 565 (citations omitted). Bankruptcy courts may "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. §157(b)(1). Bankruptcy courts may "hear" a non-core proceeding and submit proposed findings of fact and conclusions of law to the district court, which will enter final judgment after de novo review. 28 U.S.C. § 157(c)(1). As noted by the Ninth Circuit, "the power to 'hear and determine' a proceeding surely encompasses the power to hear the proceeding and submit proposed findings of fact and conclusions of law." *In re Bellingham*, 702 B.R. at 565. These provisions suggest that "Congress wanted Bankruptcy Judges to finally adjudicate bankruptcy-related matters whenever Article III permitted them to do so, and to issue recommended findings subject to de novo review in the District Court whenever it did not." *Adelphia Recovery Trust v. FLP Grp., Inc.,* No. 11 Civ. 6847(PAC), 2012 WL 264180, at *6 (S.D.N.Y. Jan.30, 2012) (quoting *In re Coudert Bros. LLP,* App. Case No. 11-2785(CM), 2011

9

WL 5593147, at *13 (S.D.N.Y. Sept. 23, 2011). Most district and bankruptcy courts addressing this issue have held that bankruptcy courts have implied authority to issue findings of fact and conclusions of law in core proceedings. *See Rothrock v. PNC Bank (In re Parco Merged Media Corp.)*, 489 B.R. 323, 325-26 (D. Maine 2013) (collecting cases). I join these courts and conclude that I may hear the Trustee's Amended Complaint and issue findings of fact and conclusions of law.

    C.    *Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)*

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." In deciding a motion to dismiss under Rule 12(b)(6), a court must treat the facts alleged in the complaint as true, construe the complaint in the light most favorable to the non-moving party, draw all reasonable inferences in favor of the non-moving party, and ask whether, under any reasonable reading of the complaint, the non-moving party may be entitled to relief. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).

In order to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

When presented with a motion to dismiss, a trial court must conduct a two-step process to determine whether relief should be granted under Rule 12(b)(6). The court must first separate

factual and legal issues while assuming that well-pleaded factual allegations are true and disregarding legal conclusions. *Fowler,* 578 F.3d at 210-11 (citing *Iqbal*, 556 U.S. at 678). Second, examining the factual allegations alone, the court must then determine whether those allegations give rise to a plausible claim for relief. *Fowler,* 578 F.3d at 211 (citing *Iqbal*, 556 U.S. at 679). If a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

The Trustee has asserted four counts against Defendants in the Amended Complaint. In Count I the Trustee alleges that certain transfers from Debtor to Defendants within two years of the filing of the petition date should be avoided as fraudulent transfers under 11 U.S.C. §548(a)(1)(A). Section 548(a)(1)(A) empowers a trustee to avoid a transfer of an interest of the debtor in property made within two years of the filing of the petition if the transfer was made with "actual intent to hinder, delay, or defraud" creditors. 11 U.S.C. §548(a)(1)(A). Under this provision, the trustee must prove that the transfer was made with an actual intent to defraud. The Trustee has alleged that within two years of filing the petition, Debtor made a variety of payments to Defendants, which he specifically identifies by amount and date. He asserts that these transfers were intended to render Debtor insolvent. The Trustee further alleges that a $33,274.04 transfer was made two days after Debtor was ordered to escrow funds for payment to TBM Hardwoods, Inc., an unsecured creditor, and that this transfer rendered Debtor insolvent. Several of the transfers described in the Amended Complaint were received by Defendant Britton allegedly for no consideration.

Section 548(a)(1)(A) does not require proof of insolvency, only proof that within two years of filing the petition Debtor transferred its interest in property with actual intent to hinder,

11

delay, or defraud one or more creditors. The Trustee has alleged sufficient facts, which if proven, could convince the Court that Debtor intentionally transferred funds to its principal and his spouse for the purpose of defrauding creditors. The allegations in Count I of the Amended Complaint are sufficient to withstand the Motion to Dismiss.[5]

In Count II of the Amended Complaint, the Trustee seeks to avoid certain transfer on the basis of constructive rather than actual fraud as provided in 11 U.S.C. § 548(a)(1)(B). To avoid a transfer under §548(a)(1)(B), the Trustee must prove that Debtor transferred its interest in property within two years of the filing of the bankruptcy petition for less than reasonably equivalent value and establish one of four other criteria. These criteria are: (1) Debtor was insolvent on the date of the transfer or became insolvent as a consequence of the transfer; (2) Debtor was engaged in or about to engage in a transaction for which its remaining property was unreasonably small capital; (3) Debtor intended or believed it would incur debts beyond its ability to pay; or (4) Debtor made transfers to or for the benefit of an insider under an employment contract that was outside the ordinary course of business. *See TSIC, Inc. v. Thalheimer (In re TSIC, Inc.)*, 428 B.R. 103, 109 (Bankr. D. Del. 2010) (holding that constructive fraud under § 548(a)(1)(B) requires showing that obligation was incurred for less than reasonably equivalent value and one of four other conditions was met). The

---

[5]Defendants do not allege that Count I is insufficient under Fed. R. Civ. 9(b). Rule 9(b) requires a plaintiff to plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984). Plaintiffs may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id*. I find that all counts of the Amended Complaint meet the standards of Rule 9(b).

Trustee has set forth adequate facts to assert a plausible claim under Count II. Accordingly, the Motion to Dismiss this count will be denied.

In Counts III and IV, the Trustee asserts claims under §§ 5104 and 5105 of PUFTA, 12 Pa. C.S. §§ 5104, 5105. Actual fraud is addressed in § 5104(a)(1), and constructive fraud is addressed in §§ 5104(a)(2) and 5105. The description of actual fraud in PUFTA is identical to the cause of action in § 548(a)(1)(A) of the Bankruptcy Code. Both statutory provisions provide for the avoidance of transfers made with actual intent to hinder, delay, or defraud creditors. *See In re Valley Bldg. & Const. Corp*. 435 B.R. 276, 285 (Bankr. E.D. Pa 2010). PUFTA lists certain "badges of fraud" to assist courts in determining whether actual fraud is present. This non-exclusive list includes whether:

> (1) the transfer or obligation was to an insider;
> (2) the debtor retained possession or control of the property transferred after the transfer;
> (3) the transfer or obligation was disclosed or concealed;
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) the transfer was of substantially all the debtor's assets;
> (6) the debtor absconded;
> (7) the debtor removed or concealed assets;
> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

12 Pa. C.S. §5404(b). These same factors are used by courts when determining actual intent under 11 U.S.C. § 548. *In re Valley Bldg. & Const. Corp.*, 435 B.R. at 285-86 (citations omitted).

13

Having determined that the Trustee has alleged a plausible claim under 11 U.S.C. § 548(a)(1)(A), I likewise find that a plausible claim has been established under 12 Pa. C.S. § 5104(a)(1).

The Trustee has alleged constructive fraud under state law in Count IV under 12 Pa. C.S. §5105. Like § 548(a)(1)(B) of the Bankruptcy Code, §5105 of PUFTA requires that a trustee prove that a debtor received less than reasonably equivalent value in exchange for payments it made to the defendants. *In re Image Masters, Inc.,* 421 B.R. 164, 176-77 (Bankr. E.D. Pa. 2009) *aff'd in part, vacated in part, remanded sub nom. Image Masters, Inc. v. Chase Home Fin.*, 489 B.R. 375 (E.D. Pa. 2013) (citing *Mellon Bank v. Official Committee of Unsecured Creditors (In re R.M.L., Inc.),* 92 F.3d 139, 144 (3d Cir.1996)); *Fidelity Bond and Mortgage Co. v. Brand,* 371 B.R. 708, 719–20 (E.D. Pa. 2007) ("The constructive fraud provisions of the PUFTA and the Bankruptcy Code should be construed and interpreted uniformly because consistency between the two statutes was a goal of those who drafted the PUFTA and who have since interpreted it.") Under § 5105 of PUFTA, not only must the plaintiff demonstrate that the debtor did not receive reasonably equivalent value for payments made, he also must demonstrate that the transfer was made while the debtor was insolvent or that the debtor was rendered insolvent as a result of the transfer. Notably, PUFTA does not include a provision analogous to § 548(a)(1)(B)(IV) of the Bankruptcy Code, which describes a transfer as constructively fraudulent, without regard to the debtor's insolvency, if the transfer was made to or for the benefit of an insider under an employment contract that was outside the ordinary course of business.

The Trustee has alleged that the transfers were constructively fraudulent under state law because Debtor was insolvent at the time the transfers were made. It has not been established at

this preliminary stage whether Debtor was insolvent when all of the alleged transfers were made.[6] Taking the allegations of the Amended Complaint along with the attached exhibits in the light most favorable to the Trustee, I find that a plausible claim for avoidance of fraudulent transfers under 12 Pa. C.S. § 5105 has been established.

Having determined that plausible claims have been alleged under 12 Pa. C.S. §§ 5104(a)(1) and 5105, the Motion to Dismiss Counts III and IV will be denied.

### III. Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss will be denied in all respects. Defendants will be directed to file an answer to the Amended Complaint within fourteen (14) days of the date of the order accompanying this Opinion.

**By the Court,**

_____
Mary D. France
Chief Bankruptcy Judge

Date: June 4, 2013

---

[6]The party challenging a transfer as fraudulent has the burden of proving the fraudulent nature of the transaction by a preponderance of the evidence whether the claim is brought under the Bankruptcy Code or under PUFTA. *Fidelity Bond and Mortg. Co. v. Brand*, 371 B.R. 708, 720 (E.D. Pa. 2007).